We'll hear argument first this morning in Case 10-1265, Martel v. Clair. Mr. Campbell. Mr. Chief Justice, and may it please the Court, for 12 years, Mr. Clair's Federal Habeas Corpus petition was litigated in the Federal District Court in front of the same Federal District Court judge. His petition raised 39 challenges to his guilt and penalty, and the judge oversaw years of discovery, presided over a two-day evidentiary hearing, and received extensive briefing. When the case was under submission, Mr. Clair sent a letter to the judge expressing dissatisfaction with his team of attorneys from the Federal Public Defender's Office and requested that they be replaced. The judge asked both sides' counsel for their position. On Clair's complaint, the Federal Public Defender responded that after conferring with their client, Mr. Clair was willing to continue with them for that point. The Court then stated it would take no further action. Three months later, just before the Court was to issue its decision in the case, Clair complained again. The Court issued a written order. Was there some way that Clair knew that the Court was just about to issue its decision? I think, Your Honor, the only way you could be sure was the fact that at some point, as I understand it, the district court judge had announced the day he would be retiring, which would be June 30th of 2005. So there's probably an inference there. It could be expected that the decision was going to be coming out by the end of the end of June, 2005. It was a deadline set for all submissions, wasn't there? There was an initial deadline set for the filing of the briefing, post-evidentiary hearing briefing, and there would be no extension to time. Subsequently, there was, in fact, another submission by Mr. Clair in May of 2005 with some additional declarations. The Court accepted those declarations but made it clear it would accept no additional submissions in the case unless it ordered otherwise so it could proceed with the decision. Once upon anyway, in June, June 16th, 2005, Mr. Clair sent a second complaint about his counsel again, and the district court issued a written order denying that request, finding that Clair's counsel was doing a proper job and did not appear to have a conflict of interest. The district court had an excellent factual basis for that conclusion because it had just completed work on its extensive order denying the petition in Mr. Clair's case. Ginsburg. But this petition had something new in the report that his investigator had turned up this evidence. That's correct, Your Honor. What Mr. Clair's complaint indicated, there was some additional physical evidence that had not been examined or investigated before. He indicated that the Federal Public Defender Act actually had met with the Orange County law enforcement about the evidence, and he was upset that there was no further action being taken by the Federal Public Defender regarding testing, seeking DNA testing or testing of that evidence. There has been some additional litigation regarding this physical evidence since the time of the unsuccessful substitution request, hasn't there been? That's correct. Could you tell us what has happened with that? I'm sorry. Could you tell us what has happened with that litigation? The status of that litigation, once the petition was denied, Mr. Clair filed a notice of appeal filed by the Federal Public Defender. Mr. Clair also filed a notice of appeal because of the denial of a substitution motion. Those are merged together. Mr. Clair was appointed new counsel. The new counsel then filed a rule, a request to the district court to entertain a Rule 60b motion, which the district court denied. The Ninth Circuit ordered that the district court consider the Rule 60b motion. The district court heard the Rule 60b motion and then denied it. Mr. Clair then filed a protective petition, a petition for writ habeas corpus for a successor petition with the Ninth Circuit and has also filed a petition for writ habeas corpus with the California Supreme Court. Now, that's what I was referring to. Yes. And what has happened there? Was there testing of this evidence in connection with that? There had been — there has been some testing of the evidence during that time by the Orange County law enforcement in regards to its relationship to the crime or its relationship to another crime that occurred at that time, which I think that information is set forth in the appendix to the opposition to the petition for certiorari. The — Can you remind me of what the outcome of that testing was? The outcome of the testing is that to the extent that the testing was done to see if the — there was any DNA matching between the other murder that had occurred a couple of days before and the murder of Ms. Rogers, let's see if I can say this succinctly, the — there was no matching of Mr. Clair's DNA with anything from the murder scene of the Rogers murder and there was no matching of any DNA that was found for the perpetrator of the other murder at the site of Ms. Rogers' murder. Sotomayor, as I read your briefs, I think you're making perhaps two different arguments, and I want to focus you in on which one you're really concentrating on, which is this presentation seems to be that regardless of what standard we apply to the court of appeals review of what the district court did in denying the motion to substitute counsel, that it was wrong. And I presume that means it was wrong for the standard you're proposing and it was wrong for the interest of justice standard. Am I correct? Yes, Your Honor. I think under any standard that would apply, we think that the Ninth Circuit's disposition was correct. As I read the Ninth Circuit decision, assuming an interest of justice standard, because that's the one they invoked, they said what happened here is that the district court didn't hold a hearing to determine itself exactly what the dispute was about. And so it was a process failure, basically, is what they're saying. Now, you make assumptions based on matters that have come up since that hearing about what the dispute was about, and but I still don't know what the Federal Defender's position was as to whether or not communications had broken down with the client to a point where they thought, as they did on appeal, that they couldn't continue. So tell me why, assuming we accept that an interest of justice standard applies, the circuit court has no power or applied it improperly by saying, forget about the remedy, has no power to say, district court judges, you have to at minimum inquire and set forth your reasons based on the facts of that inquiry. Yes. And the reason is, is that looking at the record and what was presented to the Federal District Court at the time, it received the request by Mr. Clair in June of 2005. What Mr. Clair's allegation was, was that he disagreed with the investigative, tactical, strategic decisions that were being made by the Federal public defender. That's the reason that was in Mr. Clair's allegations. Those premises, even if they're not in the district court, they're not in the district court. Sotomayor, the judge later decides after he hears from the Federal defender, I don't think that we don't think there's anything to be done, he disagrees. But he really never got an explanation from the Federal defenders. I'm sorry, I didn't get that. He never got an explanation from the Federal defenders. Your Honor, in fact, it would be, it's appropriate, if the record, if the allegations of the, of the Petitioner and the record before the court is sufficient for the court to make the finding that there is, in fact, no basis for substitution. It is not necessary for the court to go ahead and conduct an inquiry or a hearing or to initiate other further process in the case. And the allegation here, which went to the physical evidence in the case, from the standpoint of the evidence in this case and the way this case was prosecuted and the evidence of Mr. Clair's guilt, the fact that there was additional physical evidence that might be available simply wouldn't have supported any cognizable claims in the Federal habeas corpus action. There's no need for any further investigation or inquiry on the part of the court based on what was presented to it at the time. Alito, what about a possible Brady claim? Is there a disagreement about whether this physical evidence could have been tested at the time and revealed anything at the time of the trial? There, I have to, I think, I have to take what the Ninth Circuit says in its opinion about this case, which is what we have here is physical evidence that could be supported and subject to forensic testing now that was not available in 1987. So the fact that there might be later, there might have been developments in forensic techniques since 1987 when Mr. Clair's trial occurred doesn't support any claim of trial error back in 1987. You can't show any prejudice from any failure back in 1987 because the testing wasn't available to do that they now want to do. What about an actual innocence claim? Well, an actual innocence claim, I think to begin with, it wouldn't be clear based on this Court's jurisprudence at the time that a factual innocence claim would be cognizable in this Federal habeas corpus proceeding. It would be, this Court has indicated to the, has never really actually held that that is a cognizable claim. Even if it did, it wouldn't be an exhausted, it would certainly be an unexhausted claim. California, in fact, does entertain that type of claim, does provide a State avenue for that type of claim. There's plenty of reasons why you would not raise that claim at this point, especially at the end of the process in the first Federal habeas corpus petition. Sotomayor, you are familiar with 3599e, aren't you? Yes. Which requires counsel to participate in subsequent proceedings of a certain type and limited. Is it your position that if there is a complete breakdown of communications with an attorney post habeas decision, that that is inadequate in the interest of justice or otherwise for a court to say that could implicate proceedings after 3599, so I should substitute now? Actually, Your Honor, yes, it is. At that point, the defendant has, of course, already gone through the trial, the State appellate process, of course, the standard for substitution of counsel is the potential total breakdown of communications, irreconcilable conflict, conflict of interest. By the time you have gone through the entire process by which you have gone through the State trial, you have exhausted your claims in State court. Oh, but you are presuming you are going to win. Excuse me? You are presuming you are going to win. I think 3599 applies to situations in which the habeas petitioner wins a remand or otherwise has something that's going to follow the habeas decision. Well, Your Honor, the point is, is that by the time you have reached that juncture in which the claims have been raised and litigated multiple times in multiple forms, that the need for the type of communication and contact that occurs at the trial and State appellate level is not as essential or necessary. Well, suppose the public defender had said to the district court what it said to the Ninth Circuit, and that is that the attorney-client relationship has broken down to such an extent that substitution would be appropriate. He wasn't asked, but suppose the public defender had given that answer to the district judge, would the district judge still have rightly denied the motion for substitution? Yes, he would have, especially given that the case at that point was completely under submission and simply awaiting for decision. At that point, there is, in fact, no more litigation to be occurring. Whatever the problem with the communication is at that point is not going to in any way adversely affect the representation. The case is over. If I understand your answers to some of these questions, you are not at all relying on the fact that the district court had made this decision 2 months earlier. You think that the answer would be the same had the district court not made an inquiry 2 months earlier. Is that correct? That is correct. I mean, yes, that is an extra fact in this case, but I don't think that's the pivotal fact as far as what the district court could have done as far as exercising its direction, its discretion in June when it received the complaint from the district. So when is a district court required to engage in some kind of inquiry? Well, when the allegation is made that, by the Petitioner, that he has, in fact, been denied what he is entitled to under 3599, which is the appointment and representation by counsel qualified under that statute. Well, I was, again, assuming, as Justice Sotomayor was, that if we are in an interest of justice world, if that's the appropriate standard, when is the district, when does the district court have to make an inquiry, and what kind of inquiry does he have to make? The inquiry would occur when an allegation was made that, for whatever reason, the counsel does not meet the qualifications that are expected to be met, the counsel has an adverse conflict of interest, or counsel has basically reached a point where he is no longer representing or acting as an advocate fully. I thought that that test was an alternative to the interest of justice standard. I'm positing that the interest of justice standard applies, and you are giving me back those same three factors. Do you think that that's all the interest of justice standard is about? I think in the context of the Federal habeas corpus action, that is, in fact, in which there is a statutory right to counsel, that is, in fact, the interest, what the interest of justice standard would be, the interest of justice standard. Sotomayor, this is sort of a made-up standard. Can you point to one case in which this standard has been used by any district court or court of appeals? No, I cannot. But it's the case in which such a test was discussed, considered, and, in fact, in any way? No, I cannot. Where did you get it from? It's actually analogous to the way this Court over the years has divided up the jurisprudence regarding the Sixth Amendment right to counsel and the dividing line between claims of ineffective assistance of counsel and claims of denial of counsel. Well, so what you are suggesting is in noncapital cases which are less serious, you are going to have a higher bar or a right that the statute gives a judge without any limitation. The capital limitation is that the judge on its own motion or a motion by a defendant can substitute. No, we are not in the context of a noncapital habeas. There has never been any construction, certainly by this Court, of what interest of justice means in the context of substitution of counsel, of a statutory counsel in the context of either capital or noncapital habeas. And rather it's capital. So how about a standard that the courts are used to and one that has a basis in Congress's choice, like interest of justice? Well, actually, Your Honor, I think that we have, in fact, to the extent that we are analogizing to what this Court has long done as far as dividing questions of Sixth Amendment claims between ineffective assistance of counsel and denial of counsel, we are, in fact, submitting a concept that is actually very familiar to this Court and very similar to what this Court deals with in many Sixth Amendment claims. We are simply looking at it in the context now of the fact that you have been given or entitled, a statutory entitlement to be represented by counsel. You are entitled to protect that right to the extent to vindicate that particular right, which is to be appointed that counsel. If you deny that right, then you, in fact, have a legitimate reason to ask for new counsel, for new counsel to be appointed. The interest of justice standard doesn't have a fixed meaning, really, in any context. Breyer, doesn't have a fixed meaning. I mean, wouldn't you think, I suspect the answer is you do think, that all the – if there's a lot of power in many, many areas, and in one of those areas, some district judge sometime could make a horrendous mistake that really wrecks a case. And in such a matter, the court of appeals, if it sees a really horrendous error, will probably have the authority to say you went beyond whatever standard applies, at least here, at least where it's at. Okay, we agree on that one. So they use some words, affectivists, whatever the words are, interest of justice, just to reflect that fact. I mean, that's what I think happened. Then your complaint is he didn't abuse his standard. He didn't really abuse anything. He made a good decision, the district judge. Isn't that what that comes down to? That is certainly an aspect of the complaint. But the – to us, what's very important. What's important here is that the premise of the Ninth Circuit's opinion is that it would be an acceptable motion for substitution for the – for Mr. Clare. And I don't think it would be an acceptable motion for Mr. Clare to complain or allege disagreements with his counsel about something like that. Breyer, so what's bothering you is the way they applied it. Well, and they applied it in circumstances that you think they never – the district judge was actually – his decision was fine. You don't have the power to set that aside, because it's within – it's within the scope of any kind of standard you want to call it, including calling it interest of justice. Am I right in thinking that, that that's really your concern? All right.  Our concern, Your Honor, is that the premise of the Ninth Circuit's opinion is – goes to what the appropriate standard, what the appropriate level of complaint, whatever you want to call it. All right. So what you really want us to do is to look at the record of the case, go through it, and say here, whatever words you're going to use, the district court acted within his discretion in saying, don't change the counsel. Is that what you – is that what I'm supposed to do? I'm trying to get at what you want me to do. Yes, that is – yes. No, you don't want that. You don't want to say whatever words you use. No, I'm not – I – you don't. You want us to say the words to be used are the words that we use in deciding whether you have been accorded your constitutional right to counsel, right? That's – that's correct, Your Honor. I think the confusion here. I didn't mean literally whatever words you use. I'm trying to figure out what you want me to do. One is to go back and search all the cases that use some words for a standard, which, as you can tell, I'm reluctant to think that that's meaningful in this case. The other is to look at the record to see if he acted within what you'd normally think of as the district court's discretionary authority. I think the confusion here is caused by the fact that the Ninth Circuit opinion started out by borrowing the phrase, interests of justice. And inserting it into a section where it is – where it was not inserted, and it would appear to be a deliberate act of Congress to do that. And then it gave it a meaning, which we think under any circumstances would be inappropriate in this context. Roberts. Roberts. I suppose you don't think that the standard of review is abuse of discretion, because if you do, then I suppose you're assuming that the district court has discretion whether to grant the motion or not, instead of being confined by a particular standard. Well, abuse of discretion – if the court is wrong as a matter of law, of course, it automatically – I mean, that is an abuse of discretion. And our – our feeling here about the Ninth Circuit's opinion is that the way it is defined, what would be appropriate in terms of a motion for substitution and what would trigger an inquiry by the judge – you know, as a matter of law, the Ninth Circuit was wrong in this case. Well, but abuse of discretion doesn't mean that the judge operates in a vacuum. If we make – issue an opinion and say, oh, well, that the standard is an abuse of discretion, that doesn't tell people too much. Abuse of discretion based on what standards, what inquiries. And that's – and I'd like to know what your position is on that, because it seems to me that at the end of the day, it's going to be something very close to interests of justice. Well, Your Honor, that's correct. And I suppose the substance – if we want to call it an interests of justice standard, the substance of it would be that it would not be – it would not – substitution would not be – it would not be appropriate to move for substitution on the basis of disagreements with counsel about tactical or investigative decisions, such as what Mr. Clair did here. The appropriate standard is whether or not there's been an actual denial of counsel as provided under Section 359. Sotomayor, counsel, can I give you an example? Beginning of the litigation, all right, capital counsel is appointed, capital counsel wants to raise challenges to the conviction and sentence, and defendant says, I don't – I want to die. Is a district court entitled to substitute that counsel under your theory? Because you said to me it has to be counsel that's in – that counsel that has abandoned the client. Counsel doesn't want to abandon the client. Counsel wants to prosecute the case. There's no conflict of interest. Counsel is not representing anybody else. And what was your third criteria? Waxman. Well, this is a – you know, this is Seth Waxman sitting right next to you. He's undoubtedly qualified, Your Honor. I suspect that's the case. Otherwise, you wouldn't have the appointment. Sotomayor, so beginning of the case, first decision, and defendant comes in and says, substitute my attorney. What would be your argument under your test? There are several responses to that. At one level, the client always has a – and I think always has basic decision-making authority over basic decisions, whether or not a petition should be filed or not filed, this type of thing. So a failure of an attorney to abide by that particular instruction would, in fact, be a failure to – So there are some decisions that the client controls. There have always been some basic decisions a client makes in any case, but it's not – That's not abandonment. That's an error. That's a problem, but it's not abandonment under your definition. It is, in fact, the failure of the lawyer to truly act as an agent for the client at that point. Well, if I tell my attorney, follow these leads, that's a failure of an agent as well. It's actually, though, that is, in fact, normally always considered to be an area that's within the domain of the attorney. Those types of investigative, tactical decisions have always been the decisions that attorneys have normally made for their clients and not necessarily under the control of their clients. But let me talk about the volunteer situation as a practical matter. The volunteer situation is a whole – almost a whole separate category of litigation from the kind of litigation we're talking about. And what normally happens in those cases is counsel is not substituted. Usually, frequently, a second counsel is brought in to deal with representing the client on those particular issues, and the first counsel remains. So that's become almost a whole separate category. Scalia's volunteer issue, what are you talking about? A volunteer issue is when someone says I do not want to pursue my remedies, I want to simply be executed. In the practice, we call that a volunteer. We call that a volunteer. We call that a volunteer. Volunteer, volunteering to be executed. That's the normal term of art. Given my example, isn't it the case that under the interest of justice standard, there will be situations in which a substitution, like the one I just posited, would be right that wouldn't be right under your standard? Your Honor, I think that actually our standard would cover what is appropriate for protecting the defendant's statutory right to counsel, and that the issue  Sotomayor, are you suggesting that for noncapital defendants, Congress chose to give them more rather than less? No, not at all. I don't think noncapital or capital habeas Petitioners have any greater right to be a substitute counsel. But you're saying that they have lesser rights. I think my guess, I don't think this Court has ever drawn a categorical difference between them in terms of what rights are available to them for purposes of representation by counsel. Isn't delay one of the factors that courts routinely look at under the interest of justice standard? Yes. And I, you know, any motion for substitution, no matter what standard you use, should be made promptly. So we go back to Justice Breyer's point that even under the interest of justice standard, you're claiming there was an error. Absolutely. Oh, yes. Yes, we would submit even under that standard it would be an error. Your Honor, unless there's any more questions. Thank you, counsel. Mr. Waxman. Mr. Chief Justice, and may it please the Court. The court of appeals held that it was an abusive discretion to deny substitution without making any inquiry, even of counsel, into the specific situation alleged by Mr. Clair. The court did not hold that Mr. Clair was entitled to substitute counsel. It did not hold that he was entitled to amend his petition. It did not hold that substitute counsel was even required or advised to seek the appeal of that. So what if last week we get notice from Mr. Clair that he is dissatisfied with his Supreme Court counsel, that communication is broken down, that you plan to argue particular argument, present particular arguments, and he doesn't want you to do that? Do we have an obligation to conduct an inquiry into his complaint? I think if you have any obligation whatsoever, and I want to make clear that there are these kinds of letters and requests for last-minute substitutions happen all the time, and in the mine run there may not be any duty of independent inquiry. If you had one, it would simply be to do what the court did in March, which is to inquire of the two counsel in the case, is there anything to this? And then rule. Roberts, he says, I've turned up new evidence, or I think this is a great argument, and my counsel has told me he is not going to raise it, and I want new counsel who will raise this argument. Well, we have to say, look at it and say, well, we have to figure out, is that a good argument? Is it better than the ones counsel are going to raise? Has communication broken down? Waxman, No, of course not. In this situation, the court had pending before it a first petition for habeas corpus that alleged both ineffective assistance of counsel at trial and specific Brady violations. And by the way, in answer to your first question, the district judge announced that he was retiring on June 27th, effective the 30th. So this is before him. Roberts, I want to ask you about that. You mentioned that no fewer than six times in your brief. What is your point? That the judge altered his disposition of a legal matter before him for his personal convenience? Waxman, No. Roberts, Then what's the significance of the fact that he was going to retire? Waxman, The significance of the fact that he hadn't announced that he was going to retire, the significance of the fact that he did retire is only, to my mind, an explanation for why he failed to conduct the minimal inquiry that he had previously done. Roberts, So you are saying he violated his judicial oath for his own personal convenience, that he failed to do something that you say he should have done because he was retiring. Waxman, I'm not he the error would have been the same if he had stayed on the bench for another 10 years. Roberts, So why do you say six times in your brief that the judge was retiring the next day or retired the next day? Waxman, It goes to their complaints with the remedy in the case. That is, they are faulting that the remedy is not go back and ask this judge to decide whether substitution was appropriate. Roberts, There is another judge. Waxman, Yes. Roberts, There is another judge. She is available. I have to say, it strikes me, frankly, as argument by innuendo that I think is very unjustified. Waxman, Well, I apologize if it gave that impression. I don't mean any innuendo in the case. Our proposition is simply this. Prior to adjudicating the claims of ineffective assistance of counsel and Brady, when the Court receives a letter that says, Your Honor, I'm sorry for writing a second time, as you know, I have always maintained that I'm innocent, my investigator has just discovered physical evidence in the State's files that he believes may clear me. My counsel is trying to get to the point, I'm sorry, I'm still trying to get to the point of the relevance of the fact that he was retiring. Waxman, It goes to the remedy and it goes to the fact that he. Roberts, How does it go to the remedy? Waxman, They are alleging that there was an abuse of discretion not to send it back to the judge to do what he had declined to do. And our proposition is, because substitute counsel had been in place for 5 years and because the judge who had superintended the case for 12 years was no longer there, it was appropriate and within the court of appeals discretion under 28 U.S.C. 2106 to remand it to the new judge with new counsel for, to allow new counsel simply to ask the new judge who had not heard all of the witnesses or the evidence to demonstrate why, if counsel thought it was appropriate, to allow him to amend the petition under Rule 15a. Alito, Well, that would be quite incredible. Maybe that's what's required. Why isn't this a fair reading of what Judge Taylor did? As of April 29th, as I recall, there was not a problem with the representation. And the decision was made on June 30th. Now, on June 16th, that's the time when Clare sent his letter. By this point, the petition had been pending for a long time before the judge. The judge presumably was approaching the point where he was going to issue his decision. He saw the letter. He could not see any way in which the matters that were discussed in the letters could lead to a claim that would go anywhere. As to the physical evidence, if it couldn't have been tested at the time of trial, there would not have been a Brady obligation, and an actual innocence claim here would be quite far-fetched in light of the very incriminating statements that Mr. Clare made in the tape-recorded conversation. Had he substituted counsel, he would not have been under an obligation, I think, to allow substituted counsel to amend the petition, which had been pending for a long period of time. So he said counsel was doing a proper job, there doesn't appear to be a conflict of interest, and I'm going to deny this. Now, counsel could have been appointed and, in fact, was appointed to represent Mr. Clare going forward. Why isn't that a fair reading of what he did? And if so, what need was there for further inquiry? Waxman, it may very well be what was in his thought processes, but we don't know that. Kennedy, we know what was in his thought processes, Mr. Waxman, because 14 days later he issued a 60- or 61-page opinion with — dealing with 47 different claims, many of which, many of which related to actual innocence, which was the gravamen of the letter of the complaint on the 16th. So you can't consider the letter just in isolation from the 61-page opinion that's issued 16 days later. Waxman, I think that a district judge faced with a request to substitute counsel at this very late stage is appropriately — appropriately takes into account everything that has happened, everything that he has allowed to happen, everything that defense counsel has done, and he is obviously permitted to approach this request with a high degree of skepticism and a strong — And you suggest, Mr. Waxman, that he did not have to make an inquiry in every case. Is that right? You're not saying that. That's right. I mean — So what — when does a person have to make an inquiry? Well, of course — What in this case required an inquiry on the judge's part? I think, you know, if the district judge is presented with factually supported allegations that appointed counsel has failed to pursue newly discovered evidence that may be germane to an issue to be decided, especially where the potential import of that evidence is specifically explicated and corroborated by a willing percipient witness, in this case the investigator who viewed it, the district judge has an obligation simply to ask counsel for the State and counsel for the defense, please respond, as the judge did in June — in March. Now, in March, the judge asked for a response. Well, I guess this goes back to Justice Alito's question, but suppose the judge says to himself, even if the response comes in, yes, relations are terrible because the client wants the lawyers to investigate a particular thing, and the lawyers don't want to investigate that thing. The judge knows it doesn't make a difference either way because he's ready to issue his opinion, and further investigation of this evidence is not going to change his mind as to any material issue. Why should the judge not reject the motion? Well, because the judge could not know that based on the allegations in the Ford letter and the Clare letter. It is not the case, going to Justice Alito's point, from my question to my friend, that what was represented in that letter, the new physical evidence related only to DNA testing. There was a specific allegation that there were fingerprints located at the scene of the crime that previously had been represented to the trial court and to defense counsel, either to be unusable or on materials that had gone through the U.S. mail so that the probative value would be limited, and both of those things were untrue. And Mr. Ford said to the judge, I'm prepared to explain to you exactly what those prints are, and they have not been tested against anyone, including the other people who were suspected of the identical type of murder the night before in the same area, or other potential suspects in this case like Mr. Hendrickson. The Ninth Circuit, I see, I think I see what they were trying to get at. They want the — they don't see anything practical here to do except to try to get the judge, the district judge, to focus on the question of whether the petition should be amended to assert this kind of claim about the new physical evidence. Is that right? Yes, they were. That's where they're trying to go. Okay. Now, suppose you lose this case. Suppose you — they were to say — I suppose this Court said, well, to tell you the truth, that district judge was operating within his authority in saying that this counsel can continue to represent him. But we know subsequently relations broke down, and now there is a new counsel. All right? Can't the new counsel go back to the district court and say, Judge, we'd like to amend the petition so that you will consider, you know, whether it should be amended to include this physical evidence claim? Couldn't he do that? He can't ask to amend a petition in a case in which there's a final judgment. He could file a Rule 60b motion, which he did in this case, and base the verdict on the fact that he was a very, a very significant defendant. And the judge — I think you answered this, but I come to remember the answer. What happened when he filed the 60 — did they amend the petition, or did they consider the thing or not? No. While the appeal was pending, so that he wouldn't be accused of having simply sat on his rights while the Ninth Circuit was deciding, he filed a Rule 60 — he filed for leave to file a Rule 60b motion and said, in essence, look, the investigator has discovered this new evidence. I haven't been able to test it or examine it. Please give me leave to do that, because I believe it may support reopening the judgment. The district judge said, I'm not going to allow you to make that motion. The Ninth Circuit issued a mandamus directing the district judge to rule on the motion. She then denied it, essentially finding that the motion should be denied because Mr. Greeley, substitute counsel, hadn't already proven to her what it is that he was seeking to find out, that is, what does this evidence show? No, there's no remedy. In other words, what the Ninth Circuit, in my view, is trying to do is they've worked out some complicated way of trying to get the district court to consider the motion about the new physical evidence. And if that's right, then unless you — there's no way to get there. I don't see how you get there under the law. So that's my — but what do you think? I'd just like to know what his view is. I have an answer to your question, but of course I'll defer to any superseding questions from the Court. It has to go with the scope of the remedy that they did. Uh-huh. Assuming, as I do and you just said, that what the Ninth Circuit said is there's a new judge, he should have gotten a reason, an explanation, but now there's a new attorney anyway, so what do we do? Isn't the normal thing to do just to remand it to let the district court decide what steps it wants to take, including to decide whether or not it would have granted the motion for substitution if it had heard the explanation? Meaning there was a new judge, but that doesn't — a new judge is never stopped from considering what has happened in a case and to decide whether, under the facts, as they existed at the time? Of course not. I mean, even the State acknowledges that asking the judge whether or not there should be substitution when there has been substituted counsel since the appeal was taken is, as they call it, an academic exercise. But I believe the judge But it's not academic. It wasn't academic for the judge below, the new judge, to say, what happened back then? I don't believe the motion was timely. I don't believe that you were foreclosed from doing other things. Motion to substitute would have been denied. I guess I'm not sure there's a huge difference between that and what the Ninth Circuit did or what I understand the Ninth Circuit to be doing, which was to issue an order — basically say the substitution motion had to be decided within the broad discretion that the law allows before entry of judgment. We're going to do as best we can to put Mr. Clare back in that position. It seems to us that since he — since counsel said, represented, as soon as it was asked after his letter, there's an irreconcilable breakdown and substitution is advised, he has counsel and — I'm sorry. Roberts. No. I'm trying to help you. I understood you to say you had an answer to Justice Breyer's question. Yes. I do have an answer to Justice Breyer's question. If I can just — thank you. If I can just finish answering — I apologize for my lengthy answers, but — Why don't you finish your answer to Justice Sotomayor and then go back to Justice Breyer. Thank you. In essence, what's happened — what I understand the court of appeals to have decided is to say, look, because we have had substitute counsel for five years and the FPD has said it couldn't continue, we're allowing this to go back and let substitute counsel convince the judge, if it can, if it chooses to, whether or not to exercise its considerable discretion in allowing Leif to amend the petition before judgment. The judge may very well say no, and the case is then back before us, but it might say yes. In other words, to do what in essence is the prejudice or materiality inquiry that Judge Taylor would have engaged in if he found that there was a breakdown. I mean, if there's a breakdown and the judge says the only new evidence is that the moon was in the Fifth House and that doesn't depend on anything, I'm denying — or it was a new moon — I'm denying this. Justice Breyer, I — I — I agree with you that the Ninth Circuit was struggling to figure out a way to most efficiently resolve the multiple appeals that were pending in front of it. And they understood from the Rule 60b appeal that was also pending and from the appeal on the denial of substitution that there was this newly discovered evidence in the State's files, that the investigator who looked at it thought that it was really important, and they had no record about what it was or whether it should have been considered. Now, they could have said, well, we're going to direct the Rule 60b judge to grant leave to examine the physical evidence and analyze it, and it was at the abusive discretion of the Rule 60b judge not to allow Mr. Clair at least to make some showing. But the more straightforward way would have been to say, you didn't inquire of course about this, but you did inquire of counsel, counsel may have had a very good reason for not pursuing this. But in the face of a specific allegation by a willing, percipient witness, that there is highly material evidence in the State's files and the public defender is refusing to do anything about it, all we think the Ninth Circuit was holding — I thought —  I'm sorry. This is a case that's been going on for, what, 12 years in the district court? Yes. And I thought that the basic disagreement between the client and counsel was that counsel said our best shot is going to be to keep you alive, so we want to do everything we can to change the death sentence. And then — and we don't want to detract from that by making a claim of actual innocence when there's — there would be very slim basis for that. So that's the judgment, and it's a strategic judgment that counsel made. Our best shot to keep this man alive is to concentrate on the penalty base. Justice Ginsburg, if that had — if the judge had inquired of counsel and counsel had given that reason, that would be something that the court could evaluate in deciding whether the balancing test that is required by the interest of justice standard satisfied his inquiry. But we don't have any — I doubt very much that that is what counsel would have said. Counsel, if the interest of justice, does that include the available resources of the Federal public defender? I mean, those offices are notoriously understaffed. And here you have a situation where one lawyer has been representing the individual for an awful long time, and the defendant says, I want a new lawyer. It's obviously going to take that — a new lawyer away from their work and put them in the position of having to get up to speed in a new case. And I just wonder if that's part of this — I won't call interest of justice a standard. It's an aspiration. But does that go into the calculus? I would think that that — not only that goes into the calculus, but all of the, I would say, well-articulated doctrines that Congress and this Court have applied essentially establishing presumptions against reopening long-litigated matters, whether — all of those things go into the interest of justice balancing. There's no doubt about it. Roberts. Is the — is the person in a different position with the new counsel than he would have been with the old concerning the standards about reopening things? In other words, do we say, well, what would the old counsel have been able to do with respect to reopening, and say, well, that's all the new counsel can do? In other words, new counsel doesn't allow you to circumvent the various restrictions you just talked about. Of course not. The only point is what Claire was basically saying is my investigator has just found evidence that he believes is highly exculpatory, physical evidence in the State's files that was previously represented not to exist. My counsel is refusing to do anything about it. Please give me somebody, whether it's — have my counsel do it or some new counsel to present this to the judge just so the judge can decide how I'm evaluating these — the Brady and the ineffective assistance claim. And if this is as represented, it could be highly material. And one of the things I think the district court would do in that situation with the same counsel is say, look, this was a tactical strategic decision of the lawyer. You don't get to reopen something because of that. Now, does that same consideration apply with respect to the substituted counsel? Or does the substituted counsel allow the defendant to get a leg up on the process and make new arguments that the old counsel couldn't make? Well, I think that in a — if substituted counsel, if there is a remand in this case and substituted counsel makes a Rule 15 motion, the court will evaluate that under the broad interests of justice standard. I mean, whoever the counsel is has to acquit his or her professional obligations. It may very well have been, Mr. Chief Justice, that if Judge Taylor had said, look, please, you know, write to me in 3 days or let's have a status conference and explain to me what's going on. I understand you went to see this evidence. Why aren't you — is it true that you're not pursuing it? And if so, why not? That would have completely acquitted the judge's responsibility. Scalia. Mr. Waxman, the State contends that the interest of justice standard is not the right one. Why do you contend that it is? It doesn't appear in — in 3599, even though it did appear in — in the previous provision that used to cover these cases, which is 3006 AC. You want to carry it over from 3006 AC to 3599? That seems to me a little strange when they seemingly intentionally omitted it. Well, I don't think it's strange, Justice Scalia, and let me explain at least my own reaction to this. 3599, the mandatory appointment requirement was cleaved from what is now 3006, the discretionary appointment, where Congress said in the Controlled Substances Act, look, in death cases at trial and in habeas, we're not going to — we don't want to leave it to the court's, to the magistrate's discretion whether or not to appoint. We are appointing. And when it did so, I mean, it is in essence a — a progeny — I mean, it is a cleaving of what was a discretionary obligation. Congress had no need in 3599 to reiterate the language in 3006 AC, which itself is not limited to appointments under 3006 AC. I'm reading from page 95 of the Petition Appendix that the statute says — I'm sorry, it's page 93 — that the interest of justice standard says this, and it's the last sentence on page 93A. The United States magistrate judge or the court may in the interest of justice substitute one appointed counsel for another at any stage of the proceedings. It doesn't say counsel appointed under the discretionary authority of 3006. It, like the rest of subsection C, of which it is a part, is a general rule for duration and substitution of appointments. So even if it were not true that the sentence itself applied a force, it's, I think, only consistent with what Congress's manifest intention in enacting what became 3599E to permit that when substitution is requested, that motion be adjudicated in light of the interests of justice. And indeed, that's what the State told Judge Taylor the standard was in this very case. I mean, look at it this way, Justice Scalia. Imagine that a district court — I realize that the cases will be few and far between, very few and very far between, where at a late stage of the proceedings, the court will interject substitution of counsel over the State's opposition and over the court's understandable desire to serve the public interest in efficiently and fairly adjudicating motions. But in the rare case where the district judge says, gee, I think the public interest of justice really would support putting somebody else in here, but I can't because it doesn't fit within one of the three boxes of the test that the State ex nailo has announced in its merits brief in this Court, it's just impossible to imagine that Congress would have wanted a judge to say, gee, this is one of these one-in-a-million cases where the interest of justice really requires it. Alito, the interest of justice is such an open-ended test. If that is the test, doesn't it follow that it will only be in the rarest of cases that a district judge will have been found, will be found, to have abused his or her discretion in denying a substitution request? Why does that very broad standard help you here? I mean, we don't — we're not really arguing about the standard one way or the other. The point — the only real question in this case is whether, whatever the standard is, and we think it has to be something like interest of justice, a judge in this particular situation, with respect to this particular set of circumstances, there is — and my investigator, a willing precipient witness, has gone to the police station and found evidence that he believes may well clear me. It requires at a minimum that the judge say — Alito, you think there should be inquiry. Before your time runs out, how would the — how would the fact that there were fingerprints at the scene that do not match anybody who was known to be in that house have provided evidence for — provided the basis for any claim that could have established Mr. Clair's innocence at this late — at this late date, in the face of the other evidence that was present in this case, the recorded statements? Well, first of all, the other evidence in this — the case against Mr. Clair, in essence, was the wired statement that he made, and even the trial judge in this case said only of that equivocal statement, that it was, quote, capable of being regarded as an admission. Now, we don't disagree with that. We're not — Does your argument depend on a notion that the evidence against the defendant was weak? In other words, if there were a great deal of evidence against the defendant, would you be making the same argument, that the judge still had a duty to inquire, or are you asking us essentially to make a determination that this was an iffy case to begin with? Well, I think the answer — I know how frustrating this is, but I think the answer is to both — is yes to both scenarios, particularly because there was no physical evidence linking him, and really the State's case boiled down to this pretty confusing statement. It was particularly salient to say, wait a minute, I mean, the district judge had no idea that there was any dispute about physical evidence or any physical evidence was in the State's files that hadn't been disclosed. Well, suppose defense counsel had introduced a trial, fingerprint evidence showing that 10 people were present at some point in that house, and they weren't people who lived there. That's — it's weak exculpatory evidence for the defendant at best, that there were unknown people in the house. It might have been the cable guy. Who knows who they were. So it doesn't help very much. Justice Alito, I mean, we're of course all arguing in a vacuum here because we don't know what the fingerprint evidence, if it were tested and run against databases, would show. But let me give you one not at all far-fetched example. The State had — the county coroner had determined that because of the extraordinary similarity between the murder of a woman in the — very close by the night before and this one, including the very peculiar puncture injuries, the coroner's report in the State's file said this is very likely the same perpetrator. The State has identified the perpetrator of that other crime. And we don't know whether even at this day the State has matched that perpetrator's fingerprints with the fingerprints that were discovered next to the victim in this case. And it wouldn't be far-fetched to say that in a case involving either Brady — may I finish? It will just be this sentence. Brady or ineffective assistance of counsel, if the fingerprint evidence did link up in that way, it certainly would go into the habeas judge's evaluation of the merits of those claims. Thank you. Roberts. Roberts. Mr. Campbell, you have 3 minutes remaining. Sotomayor. Can you tell us whether that testing has been done or not? No. I don't believe that testing has been done. I'm sorry. No, you don't think it has? No. I don't. I don't. The testing has not been done. The only testing I'm aware of is the testing that's discussed in the appendix. In the appendix. Yes. Which excluded Mr. Goh, who apparently was the perpetrator of the other murder, from having any DNA at the scene of the Rogers murder. And Mr. Goh is dead now. So Mr. Goh's prints don't match the prints found in the file? Let me say, I am not aware of the answer is, I am not, there has been no test comparison of the fingerprints of Mr. Goh to my knowledge, and with what was found at the Rogers murder. The only testing that we have is the testing that is in the appendix to the opposition to cert regarding the DNA comparisons that were done. That doesn't worry your prosecutor's office? I think that the problem that the, from the standpoint of the prosecutor's office, the nothing that can be found about this case would undercut the fact that Mr. Clare. If the fingerprints that were found at the scene of this crime matched up, that wouldn't give you pause? It would certainly be, it would certainly, I think it would give them pause. I'm sorry, what? I think it would give them pause. But the fact is the. So why hasn't the test been done? I don't know why the testing has not been done. But whatever the testing would be, the fact is Mr. Clare made numerous admissions and numerous statements implicating himself in the murder of Linda, of Ms. Rogers during the tape conversation he had with Ms. Flores, which also corroborated Ms. Flores' testimony about his involvement in that murder. And that is the critical evidence in this case. And the California Supreme Court, which has had this information in front of it, has also, in fact, denied already a petition based on the available evidence about the murders. I think if also, if you look. You don't think it's an iffy case? No, not based on that tape statement. But the tape statements are filled with implied admissions about what he did with the jewelry, about trying to evade her questions about the case, to do anything to try to avoid having to really confront himself directly with involvement in the case. It really is a very damning, damning tape. But it's all that what he told his girlfriend, right? There's nothing else. It's only that. Well, I think the point of it is that the tape, she testified, and the tape corroborates her testimony. So, in fact, what you have is you have mutual reinforcement. Thank you, counsel. The case is submitted.